IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: A VERBATIM EXTERNAL HARD DRIVE, MODEL 53008, SERIAL # CT221Y091738; A EMTEC USB THUMB DRIVE, LABLED Z1467; ONE SANDISK MICRO SD CARD; A SILVER AND BLACK ZTE CELL PHONE, MODEL Z820, SERIAL # 32BC6436C94F, IMEI # 868485028414575; A BLUE AND BLACK ZTE CELL PHONE, MODEL Z988, SERIAL # 329764711066, IMEI # 868962020070860; A GRAY HTC CELL PHONE, IN A WHITE PROTECTIVE CASE WITH ORANGE AND GREY SPECKS; A IPHONE SE MODEL A1662, IMEI # 355433073728754; A ROSE GOLD IPHONE S MODEL A1634, FCC ID # BCG E2944A; A SAMSUNG GALAXY TABLET, SERIAL # R52HB1X3K3M; A RED HP LAPTOP COMPUTER, SERIAL # 5CD55109D6; and AN HP LAPTOP COMPUTER, SERIAL # CND70259CG | Case No.:  4:18mj37-CAS |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, John Milhous, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the following electronic devices and storage media:

    A.    A VERBATIM EXTERNAL HARD DRIVE, MODEL 53008, SERIAL # CT221Y091738;

    B.    A EMTEC USB THUMB DRIVE, LABLED Z1467;

    C.    ONE SANDISK MICRO SD CARD;

    D.    A SILVER AND BLACK ZTE CELL PHONE, MODEL Z820, SERIAL # 32BC6436C94F, IMEI # 868485028414575;

    E.    A BLUE AND BLACK ZTE CELL PHONE, MODEL Z988, SERIAL # 329764711066, IMEI # 868962020070860;

    F.    A GRAY HTC CELL PHONE, IN A WHITE PROTECTIVE CASE WITH ORANGE AND GREY SPECKS;

    G.    A IPHONE SE MODEL A1662, IMEI # 355433073728754;

    H.    A ROSE GOLD IPHONE S MODEL A1634, FCC ID # BCG E2944A;

    I.    A SAMSUNG GALAXY TABLET, SERIAL # R52HB1X3K3M;

    J.    A RED HP LAPTOP COMPUTER, SERIAL # 5CD55109D6; and

    K.    AN HP LAPTOP COMPUTER, SERIAL # CND70259CG

as further described in Attachment A, which are currently in possession of the United States Secret Service in Tallahassee, Florida; and the extraction from these electronic devices and storage media of the items and information described in Attachment B.

    2.    I have been a Special Agent with the United States Secret Service ("USSS") for approximately nineteen years. Prior to that, I was a police officer for approximately six months and a Secret Service Uniformed Division Officer for two years. During my combined twenty-two years of law enforcement, I have received fifty-two weeks of specialized training by the United States Secret Service. This

training focused upon methods of unlawful counterfeiting and electronic access fraud, as well as the means by which individuals capture, launder and conceal their profits from fraudulent activities, and the use of assets to facilitate unlawful fraudulent activity, and the law permitting the forfeiture to the United States of assets used or intended to be used to facilitate the fraud violations. I have extensive experience in debriefing defendants, conspirators, witnesses, and informants who have been involved or are involved in illegal fraud related activities.

3.      As an agent with the USSS, I have also been involved in the execution of numerous state and federal search warrants. Materials searched for and recovered during the execution of these search warrants include but are not limited to the following: evidence consistent with the manufacturing of counterfeit currency, computers and or computer systems, central processing units, wireless communications devices, external and internal storage equipment (i.e. floppy disks, CDs, thumb drives, etc.) or media, terminals or video display units, network devices and peripheral equipment such as magnetic stripe reader/writers, cables, keyboards, printers, modems or acoustic couplers, automatic dialers, computer-related documentation, and computer data, all of which have been or potentially could have been utilized in the commission of the offense referenced below.

4.      I base this affidavit on my personal investigation and the investigation of other law enforcement agents involved in this investigation with whom I have

spoken. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that the electronic devices and storage media described in Attachment A contain evidence in violation of 18 U.S.C. §§ 1028A (aggravated identity theft) and 1029 (fraud and related activity in connection with access devices).

## PROBABLE CAUSE

6. On December 7, 2017, a U-Haul truck driven by Alcides Alonso-Pinto and occupied by Thais Ricolt Llanos, was stopped by the Florida Highway Patrol for impeding traffic in the rain and a defective brake light. During the traffic stop, the odor of stale burnt marijuana was detected from within the vehicle and a probable cause search was conducted of the U-Haul truck and a 2014 black Audi SUV in tow, registered to Alonso-Pinto.

7. During the search of the U-Haul truck, $6,445.00 in cash and loose marijuana residue were recovered.

8. During the search of the 2014 black Audi SUV, officers located four re-encoded gift cards and four genuine gift cards.

9. A purchase receipt for a watch in the amount of $1,253.50 in the name of B.K.B. was located during the search.

10. Additionally, one external hard drive, one thumb drive, one SD memory card, five cellular telephones, one electronic tablet, and two laptop computers were recovered. (*Items listed as A-K above and described in Attachment A*)

11. A review of the magnetic stripes on four of the gift cards recovered during the traffic stop revealed them to be re-encoded with compromised credit/debit card information. This information included the account numbers and names of the true account holders. The compromised account numbers and names found on the magnetic stripes are as follows:

    a. xxxx xxxx xxxx 5707 in the name of K.H.

    b. xxxx xxxx xxxx 8551 in the name of J.B.

    c. xxxx xxxx xxxx 2976 in the name of J.P.

    d. xxxx xxxx xxxx 1494 in the name of K.M.

12. Based on my training, experience, my participation in this investigation and other investigations involving conspiracies to commit identity theft fraud and access device fraud, I know that persons who engage in identity theft schemes are not unlike any other individual in our society in that they maintain documents, photographs, and daily records. These documents, photographs, and daily records will normally be retained for long periods of time regardless of whether their value to the individual has diminished. Often this evidence is generated, maintained, and subsequently forgotten. Records that one would normally think a prudent person

would destroy because of the incriminating nature of the records are kept. I have participated in the execution of search warrants where documentary evidence dating back years has been found. This type of evidence is often maintained in electronic format on cellular phones, tablets, memory cards, and laptop computers.

13.     Further, I know that those who commit identity theft and access device fraud frequently know others involved in the trafficking of Personal Identifying Information ("PII"); and papers, records or electronic data reflecting names, addresses, telephone numbers of co-conspirators, sources of PII and PII customers, and other items are frequently maintained by such persons, which provide evidence of the identities of others involved in such offenses.

14.     Based upon my involvement in and conversations with other agents working similar cases, I have learned that these offenders use multiple mobile and cellular telephones to communicate with each other regarding PII and counterfeit gift, credit, and debit cards, and that mobile and cellular telephones often contain evidence of PII transactions, the manufacture or use of counterfeit credit cards, and fruits of such crimes from pictures, text messages, call logs, and other electronically stored data on one or more mobile and cellular telephones.

15.     Based on my training and experience, and the evidence gathered by the investigating officers there is a high probability that documentary evidence indicative of PII trafficking and the manufacture and use of counterfeit gift, credit,

and debit cards will be maintained inside the wireless telephones, laptop, tablets, and storage devices as described in this affidavit and there is probable cause to search for the items located inside the devices named in this affidavit.

16. These electronic devices and storage media are currently stored at the Tallahassee Office of the United States Secret Service. In my training and experience, I know that these items have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when they s first came into the possession of the Florida Highway Patrol.

## **TECHNICAL TERMS**

17. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "landline" telephones. A wireless telephone usually contains a "call log", which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.

These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

     b.    GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer

connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

  c. Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

  d. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

  e. Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their

recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

18. Based on my training, experience, and research, I know that the subject phones have capabilities that allow them to serve as a wireless telephone, GPS navigation device, a digital camera, a portable media player, and as a web browser to access the internet. In my training and experience, examining data stored on the subject electronic devices and storage media can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that

might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the subject electronic devices and storage media were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the subject devices because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    b.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    c.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.

Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    d.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the subject electronic devices, wireless telephones, and storage media consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22.    *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

# CONCLUSION

23.  I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the subject electronic devices and storage media described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
John Milhous
Special Agent
United States Secret Service

Subscribed and sworn to before me
on February 2, 2018 :

_____
THE HONORABLE CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## DESCRIPTION OF THINGS TO BE SEARCHED

**The Property's Physical Description:**

A. A VERBATIM EXTERNAL HARD DRIVE, MODEL 53008, SERIAL # CT221Y091738;
B. A EMTEC USB THUMB DRIVE, LABLED Z1467;
C. ONE SANDISK MICRO SD CARD;
D. A SILVER AND BLACK ZTE CELL PHONE, MODEL Z820, SERIAL # 32BC6436C94F, IMEI # 868485028414575;
E. A BLUE AND BLACK ZTE CELL PHONE, MODEL Z988, SERIAL # 329764711066, IMEI # 868962020070860;
F. A GRAY HTC CELL PHONE, IN A WHITE PROTECTIVE CASE WITH ORANGE AND GREY SPECKS;
G. A IPHONE SE MODEL A1662, IMEI # 355433073728754;
H. A ROSE GOLD IPHONE S MODEL A1634, FCC ID # BCG E2944A;
I. A SAMSUNG GALAXY TABLET, SERIAL # R52HB1X3K3M;
J. A RED HP LAPTOP COMPUTER, SERIAL # 5CD55109D6; and
K. AN HP LAPTOP COMPUTER, SERIAL # CND70259CG

**The Property's Location:**

The property to be searched is currently located at the Tallahassee office of the United States Secret Service.

# **ATTACHMENT B**

1.  Any electronic data stored on the subject electronic devices and storage media, that is the hard drives, thumb drives, SD cards, wireless telephones, tablets, laptop computers (hereinafter Devices) described in Attachment A, to include any stored electronic phone books, call logs, digital photographs, video files, text messages, emails, and all records that relate to the criminal violations supported and set forth in the affidavit, including:

   a.  The cellular telephone number belonging to the target phones;

   b.  Telephone numbers, email addresses, physical addresses, social media information, usernames, passwords, and other contact information for individuals in communication with the named subjects;

   c.  Calendar entries;

   d.  Photographs and videos;

   e.  Maps, map search histories, global positioning records, and other location records;

   f.  Internet search histories and bookmarks;

   g.  Incoming and outgoing calls, emails, text messages, call logs, chat histories, stored voice mails, and other communications;

   h.  Any correspondence, including memoranda, notes, diaries, documents, and journals;

      i.      Travel records;

      j.      Personal identifying information, including names, dates of birth, social security numbers, driver's license information, passport numbers, passport information, account numbers, membership numbers, usernames, and passwords, as well as records reflecting the source and uses of this information;

      k.      Financial records;

      l.      Photographs and videos relating to the violations described above, or constituting evidence of the violations described above, or showing that who possessed or used the Device;

      m.      Lists of customers and/or contacts and related identifying information;

      n.      Types, amounts, and prices of PII and/or counterfeit gift cards, credit cards, etc., as well as dates, places, and amounts of any specific transactions;

      o.      Any information related to sources of PII and/or counterfeit gift cards, credit cards, etc. (including names, addresses, phone numbers, or any other identifying information);

      p.      Any information recording the subjects' schedule or travel;

      q.    Any information stored in digital image or audio files related to sources or customers of PII and/or counterfeit gift cards, credit cards, etc.

2.    Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.    Records and things evidencing the use of the Internet Protocol address of the Devices to communicate with Internet Service Providers (ISPs), including: records of Internet Protocol addresses used; and records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.